IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

Civil Action No.: 1:18-CV-885

_____
                                                              :
KEVIN DOYLE and HASHIM WARREN,                                :
                                                              :
                    Plaintiffs,                               :
                                                              :
vs.                                                           :
                                                              :          **COMPLAINT**
                                                              :      **(Jury Trial Demanded)**
ADVANCED FRAUD SOLUTIONS, LLC and                             :
THOMAS LAWRENCE REAVES, JR.,                                  :
                                                              :
                    Defendants.                               :
_____                    :

    **NOW COME** the Plaintiffs, Kevin Doyle and Hashim Warren, by and through

undersigned counsel, complaining of the Defendants, and allege and say as follows:

### NATURE OF THE CASE

    1.    The Defendants in this case engaged in systematic retaliation against the Plaintiffs

after they reported, and participated in an investigation of, gender discrimination within the

workplace that involved misappropriation of company resources, ultimately resulting in the loss

of the Plaintiffs' jobs. This is a civil action seeking compensatory and punitive damages for

unlawful employment retaliation in violation of 42 U.S.C. 2000e-3, wrongful termination, and

tortious interference with contract.

### PARTIES

    2.    Plaintiff Kevin Doyle (hereinafter "Doyle") is resident of Forsyth County, North

Carolina.

    3.    Plaintiff Hashim Warren (hereinafter "Warren") is a citizen and resident of

Guilford County, North Carolina.

4.     Defendant Advanced Fraud Solutions, LLC (hereinafter "AFS") is, upon information and belief,  a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business in Guilford County, North Carolina. AFS may be served with process through its registered agent, Blanco Tackabery & Matamoros, P.A. at 110 Oakwood Drive, Suite 500, Winston Salem, NC 27103.

5.     At all times relevant, AFS employed fifteen (15) or more persons.

6.     Upon information and belief, Defendant Thomas Lawrence Reaves Jr. (hereinafter, "Reaves") is a citizen and resident of Guilford County, North Carolina.

7.     At all relevant times, Reaves was the President of AFS.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all the parties and matters in controversy herein, and they are properly before this court pursuant to 28 U.S.C. § 1331 and § 1367.

9.     Venue is proper under 28 U.S.C. 1391.

## GENERAL ALLEGATIONS

10.     Plaintiff Hashim Warren was hired by Defendant AFS as a full-time, salaried employee, with the title of "Director of Marketing," on or about August 24, 2015.

11.     Plaintiff Kevin Doyle was hired by Defendant AFS as a full-time, salaried employee with the title "Marketing Coordinator" on or about February 22, 2016.

12.     Warren was, at all relevant times, a supervisor of Doyle.

13.     Defendant Reaves was at all times the President of AFS and a supervisor of Warren.

14.     AFS owned a 50% interest in The Coder Foundry, LLC (hereinafter, "Coder Foundry").

15.     Reaves was also the Chief Executive Officer of Coder Foundry.

16.     Until September of 2017, AFS and Coder Foundry shared the same physical address.

17.     Warren and Doyle were regularly instructed to perform work for Coder Foundry, in addition to their regular duties for AFS.

18.     Upon information and belief, sometime between late 2016 and early 2017, Reaves began an inappropriate extra-marital affair with a female subordinate (hereinafter the "Female Employee") who also performed marketing and sales duties for Coder Foundry.

19.     On or about January 1, 2017, Reaves transferred the Female Employee to AFS, and provided her a substantial pay raise, although her primary responsibilities remained with Coder Foundry and appeared unchanged. Reaves also permitted the Female Employee to work from home.

20.     Plaintiffs were disparately treated, and did not receive raises remotely close to the raise the Female Employee did. Plaintiffs were also not permitted to work from home.

21.     Upon information and belief, no male employees in a similar capacity with the company received a raise remotely close to the level the Female Employee received.

22.     Plaintiffs also became aware that the Female Employee was not performing her job duties, that Reaves was covering for the Female Employee, that Reaves and the Female Employee would frequently leave the office for periods of two (2) to four (4) hours at the same time, that they were seen in closed offices together, and that Reaves was providing other benefits to the Female Employee at the company's expense that did not seem appropriate (such as hotel rooms and meals), and that Reaves was generally showing overt favoritism to the female employee despite her poor job performance.

23.     Doyle reported his concerns that Reaves was showing favoritism towards the Female Employee to Warren, his immediate supervisor.

24.     Plaintiffs believed that Reaves' misuse of company funds to further his relationship with the Female Employee were tantamount to embezzlement of company money.

25.     Plaintiffs were informed and believed that Reaves had previously had a relationship with a separate female employee, and fired a male employee who had reported concerns with Reaves' interactions with said female.

26.     Plaintiffs were therefore informed and believed that Reaves was establishing a pattern of engaging inappropriately with female employees, and had demonstrated his intent to inappropriately reward (at a cost to the company) those female employees willing to enter relationships with Reaves, who held a position of power and influence at AFS and its affiliates. Male employees under Reaves did not have the option to pursue such arrangements with Reaves.

27.     In March of 2017, Plaintiffs each had discussions with one of AFS's board members and managers, Bobby Davis[1], in which they reported Reaves' conduct and their concerns, including not only the preferential treatment of the Female Employee, but also the misuse of company money to further the same.

28.     Warren specifically raised concerns that Reaves' had a position of power over the Female Employee, and was concerned that he was exerting his influence to further the inappropriate relationship, and questioned whether the relationship was consensual under the circumstances. Warren's concern was essentially that Reaves was creating a hostile work environment for female employees.

29.     Plaintiffs reasonably believed that Reaves conduct constituted gender

---

[1] Bobby Davis was listed by AFS as one of its three Managers in its 2016 Annual Report filed with the North Carolina Secretary of State.

discrimination, by creating workplace opportunities and benefits to female employees that were not available to male employees, a potentially hostile work environment, and by creating a greater burden on the male employees through the preferential treatment of female employees.

30. Plaintiffs were each then contacted by AFS's human resources department, and cooperated with their internal investigation of Reaves' conduct. At the request of AFS's human resources department, Plaintiffs provided statements that were truthful and accurate concerning Reaves' conduct.

31. On or about March 30, 2017, an AFS human resources representative issued a report of her findings after conducting an investigation into the allegations into Reaves, which cited the "significant increase" in the Female Employee's pay as "difficult to justify a decision not to terminate his employment" without some reasonable explanation, and suggested Reaves had breached his fiduciary duties as an officer and director of AFS.

32. Upon information and belief, on April 4, 2017, the AFS Board met with Reaves to discuss his performance and the pervasive complaints of favoritism he had shown towards the Female Employee.

33. Upon information and belief, at said meeting Reaves admitted that he had a relationship with the Female Employee which had affected his judgment and actions as an officer of AFS and Coder Foundry, that his actions were a breach of the AFS Board's expectations and trust, and that the severity of his actions justified disciplinary action up to and including termination.

34. On April 14, 2017, Warren initiated his first charge with the Equal Employment Opportunity Commission ("EEOC"), asserting disparate treatment based upon gender in violation of Title VII of the Civil Rights Act of 1964. That charge was subsequently withdrawn

upon payment of certain commissions to Warren which he lost as a direct result of the Female Employee's failure to carry out job duties.

35.     On April 17, 2017, AFS issued a Letter of Reprimand and Parameters for Continued Employment to Reaves, that, *inter alia*, terminated Reaves' oversight of Coder Foundry, removed the Female Employee from Reaves' oversight, and provided the following terms of his continued employment:

- "You shall not engage in retaliation of any kind toward employees who you believe may have come forward during the investigation into this matter."

- "You shall be restricted from taking employment actions such as termination, discipline, or promotion without approval from the board, until further notice."

36.     The aforementioned letter also stated that Plaintiffs would report to AFS manager and board member Bobby Davis, in lieu of Reaves, until further notice. Accordingly, Reaves was aware by that point, if not sooner, that the Plaintiffs had participated in the investigation against him.

37.     Nevertheless, Reaves continued to exercise control over the Plaintiffs.

38.     Almost immediately after Reaves was reprimanded, he began a campaign of overt retaliation against the Plaintiffs:

- Reaves attempted to prohibit Plaintiffs for performing any further work for AFS, despite the fact AFS was their employer;

- Reaves stripped Warren of decision-making authority he had previously had at AFS;

- Reaves cancelled projects specifically assigned to the Plaintiffs; and

- Reaves repeatedly approached Bobby Davis with complaints about the Plaintiffs

which were untruthful and/or misleading in an effort to undermine Davis' confidence in the Plaintiffs.

39.     In June of 2017, Reaves outsourced all of the work Plaintiffs previously provided for AFS, and stripped Warren of his title as Marketing Director in an embarrassing, direct confrontation in view of other employees without warning.

40.     Warren's position at AFS was replaced by a female, upon information and belief selected by Reaves, whose physical appearance is consistent with what Plaintiffs were informed to be Reaves' "type" (i.e. she had physical characteristics that Reaves was attracted to.).

41.     Although the Plaintiffs continued to be employed by AFS, their work was thereafter exclusively directed to projects for Coder Foundry.

42.     Between July and September of 2017, Reaves engaged in increasing retaliation against the Plaintiffs, to wit:

- Reaves changed a password for a website Doyle was responsible for, one day before the website was to be utilized for a Coder Foundry event. Reaves attempted to undermine Doyle, and Warren, through this action by attempting to sabotage their work.

- Reaves physically took furniture, whiteboards, and telephones from the Plaintiffs, although said items were not thereafter utilized by AFS and were, upon information and belief, placed in storage and/or destroyed.

43.     Plaintiffs raised Reaves' retaliation with Bobby Davis on multiple occasions, but AFS's Board refused to act, with at least one other member of the Board stating in August of 2017 that they "don't have time to referee BS," and that they felt like they were "going to be like kindergarten teachers." Upon information and belief, Reaves was made aware of the Plaintiffs'

assertions of retaliation, and was only emboldened to step up his efforts by the Board's inaction.

44.     In September of 2017, Plaintiffs were told that they would no longer be employed by AFS, but would thereafter be employed by Coder Foundry. Although AFS termed this a "transfer," it was in reality a termination of the Plaintiffs by AFS.

45.     Employees who had not participated in the investigation of Reaves were allowed to remain with AFS, and did not suffer the adverse treatment Plaintiffs were forced to endure.

46.     Plaintiffs, and others who participated in the investigation, were terminated from AFS and "transferred" to Coder Foundry.

47.     The "transfer" of Plaintiffs to Coder Foundry resulted in a reduction of their benefits, reduced opportunities for growth, and damage to their professional standing and reputations.

48.     Upon information and belief, Reaves intentionally retaliated against the Plaintiffs for their participation in the investigation of his preferential treatment based on gender, culminating with the decision, at the direction of Reaves, to terminate the Plaintiffs' employment with AFS and "transfer" them to Coder Foundry.

49.     Indeed, Bobby Davis has stated that the Plaintiffs were terminated from AFS "because that was the result Mr. Reaves wanted."

50.     Upon information and belief, at the time Plaintiffs were re-employed by Coder Foundry, it was insolvent and on the verge of bankruptcy—a fact which Reaves was aware of.

51.     Plaintiffs' employment with Coder Foundry was terminated in November of 2017 as a result of its insolvency, and Coder Foundry filed bankruptcy shortly thereafter.

52.     Upon information and belief, Reaves intentionally terminated the Plaintiffs from AFS, and had them "transferred" to Coder Foundry, because he knew Coder Foundry's failure

was imminent, and wanted the Plaintiffs to suffer in retaliation for their reporting and participation in the investigation of Reaves' preferential treatment of females and inappropriate conduct detrimental to AFS and Coder Foundry as set forth herein.

53.     Doyle filed a Charge of Discrimination with the EEOC on or about November 30, 2017, alleging gender-based discrimination and retaliation, and was issued a "Notice of Right to Sue" dated August 8, 2018.

54.     Warren filed a Charge of Discrimination with the EEOC on or about November 20, 2018, alleging retaliation for his reporting of gender based discrimination, and was issued a "Notice of Right to Sue" dated July 31, 2018.

55.     But for the wrongful acts of the Defendants, Plaintiffs would have continued in their employment with AFS and continued to earn salary, benefits, and career development into the foreseeable future.

56.     As a further direct and proximate result of the Defendants' wrongful actions, Plaintiffs have incurred, and are entitled to recover, significant damages, including damages to their reputation, emotional and mental suffering, and incursion of legal fees.

### FIRST CLAIM FOR RELIEF
**(Unlawful Employment Discrimination/Retaliation - 42 U.S.C. 2000e-3 - Defendant AFS)**

57.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 56 as though fully set forth herein.

58.     Plaintiffs expressly opposed what they reasonably believed to be unlawful employment practices of Reaves and AFS, including discrimination on the basis of gender.

59.     Plaintiffs engaged in protected activity, to wit, Plaintiffs reported their good faith and reasonable belief that Reaves was engaging in unlawful gender discrimination by showing favoritism to what they believed to be the second female employee he had an inappropriate

relationship with, which constituted preferential treatment available to female employees, both in compensation and terms of employment, that were unavailable to male employees, that also resulted in a misuse of company resources, and further raised concerns of a potentially hostile work environment. Plaintiffs also cooperated with an investigation into the allegations by AFS's human resources department, which included the provision of truthful statements requested by the human resources department on the subject of preferential treatment of the female employee by Reaves.

60.     Furthermore, Warren specifically filed a charge with the EEOC alleging gender discrimination in violation of Title VII, which was also protected activity.

61.     Plaintiffs' belief that the conduct of Reaves they reported and provided in response to AFS's internal investigation constituted discrimination on the basis of gender was reasonable given the facts and circumstances they were aware of.

62.     Upon information and belief, Reaves was almost immediately made aware of the Plaintiffs' protected activities.

63.     Following his knowledge of the Plaintiffs' protected activities, Reaves engaged in a campaign of retaliation as set forth herein, that culminated with the Plaintiffs' termination, all of which constituted adverse employment action.

64.     Specifically, Reaves took responsibilities and authority from the Plaintiffs, demeaned the Plaintiffs and created a hostile work environment for them, lied about the Plaintiffs to other officers of AFS and Coder Foundry, removed furniture and equipment from the Plaintiffs they had previously been permitted to use, outsourced the Plaintiffs' jobs, and terminated the Plaintiffs from AFS, transferring them to a company he knew was insolvent and would imminently file for bankruptcy.

65. Plaintiffs also reported what they reasonably believed to be unlawful retaliatory adverse actions of Reaves *before* they were terminated, which Reaves became aware of and engaged in additional acts of retaliation, including the termination of the Plaintiffs from AFS.

66. All of Reaves' actions against the Plaintiffs were in retaliation for their engagement in the protected activities.

67. Upon information and belief, Reaves had a history of retaliation that included terminating another male employee who complained about his inappropriate interactions with a different female employee.

68. Upon information and belief, AFS, by and through its Board and human resources department, was aware of, and condoned, Reaves' retaliation against the Plaintiffs following their protected activity.

69. Other employees who did not engage in protected activity did not suffer the adverse employment actions that Plaintiffs suffered, and at least one other male employee who engaged in the protected activities was subjected to the same adverse employment actions.

70. But for the Plaintiffs' participation in the protected activities, Reaves, and thereby AFS, would not have retaliated against Plaintiffs by taking the adverse employment actions against them described herein.

71. Upon information and belief, despite being fully apprised of Reaves' retaliation against the Plaintiffs, AFS failed to discipline Reaves for his retaliation, and in fact Reaves remains the President of AFS to this day, upon information and belief.

72. As a direct and proximate result of the Defendants' retaliation against the Plaintiffs in violation of 42 U.S.C. § 2000e-3, Plaintiffs are entitled to an award of damages, including back pay, front pay, and compensation for lost benefits, damage to their reputation,

emotional and mental suffering, and incursion of legal fees against AFS.

## SECOND CLAIM FOR RELIEF
### (Wrongful Discharge in Violation of Public Policy-Defendant AFS)

73.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 72 as though fully set forth herein.

74.     Plaintiffs were employees of Defendant AFS. Plaintiffs employment contracts with Defendant AFS were terminable "at will," with or without cause.

75.     Plaintiffs engaged in activity, as set forth above, that was expressly protected by 42 U.S.C. § 2000e-3.

76.     It is the public policy of the State of North Carolina "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . sex . . . by employers which regularly employ 15 or more employees. N.C. Gen. Stat. § 143-422.2.

77.     It is also a crime for a corporate officer to "embezzle or fraudulently or knowingly and willfully misapply of convert to his own use," or "take, make away with or secrete, with intent to embezzle or fraudulently or knowingly and willfully misapply or convert to his own use" . . . "any money, goods, or other chattels, bank note, check or order for the payment of money issued by or drawn on any bank or other corporation . . . that (i) belongs to any other person or corporation." N.C. Gen. Stat. § 14-90.

78.     Upon information and belief, Reaves, as a corporate officer of AFS, embezzled, or fraudulently or knowingly and willfully misapplied monies that belonged to AFS for his own personal use and in furtherance of his illicit affair with the Female Employee.

79.     Specifically, upon information and belief, Reaves misapplied company money to

purchase expensive meals for himself and the Female Employee that were not legitimate business expenses, and purchased one or more hotel rooms for himself and the Female Employee that were not legitimate business expenses.

80.     The Plaintiffs made the AFS Board aware of Reaves' misappropriation of company money for personal use and benefit, and upon information and belief, Reaves was made aware of the Plaintiffs' report of the same.

81.     Plaintiffs were terminated because they engaged in the protected activity of reporting gender discrimination in the workplace, for reporting unlawful retaliation as a result of their reporting of gender discrimination in the workplace, for providing truthful statements about Reaves' conduct to investigators, and for reporting Reaves' embezzlement, all which violated the express laws and public policies of the State of North Carolina and/or the United States.

82.     The termination of the Plaintiffs by AFS was in violation of the public policies of the State of North Carolina and/or the United States.

83.     As a direct and proximate result of the Defendants' wrongful termination of the Plaintiffs in violation of public policy, as set forth herein, Plaintiffs are entitled to an award of damages, including back pay, front pay, and compensation for lost benefits, damage to their reputation, and emotional and mental suffering.

### THIRD CLAIM FOR RELIEF
#### (Tortious Interference with Contract – Defendant Reaves)

84.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 83 as though fully set forth herein.

85.     The Plaintiffs had a contractual relationship with AFS that included express terms which governed positions, duties, and terms of their employment, and bestowed rights upon Plaintiffs to receive compensation and benefits from AFS.

86. Plaintiffs' contracts with AFS were open-ended, and Plaintiffs had a reasonable expectation of continued employment with AFS at all relevant times.

87. Defendant Reaves had personal knowledge of the Plaintiffs' contracts with AFS, as he was copied to their offer letters, was the President of the company, and familiar with the terms of their employment.

88. Defendant Reaves intentionally induced AFS to terminate the Plaintiffs and cease performance under the terms of their employment contracts. AFS Manager and Board member Bobby Davis has stated "that was the result Mr. Reaves wanted."

89. Reaves acted without justification in terminating the Plaintiffs, in that the Plaintiffs were performing their job duties satisfactorily, and were compliant with all their terms of employment. Reaves decision to outsource the Plaintiffs' positions and terminate them was in direct response to their reporting of his preferential treatment of the female employee and embezzlement, their participation in the investigation thereof.

90. Reaves' motives in terminating the Plaintiffs were not reasonable, nor a good faith attempt to protect his or AFS' interests in the Plaintiffs employment contracts.

91. Rather, Reaves' motives were personal and malicious, unlawful retaliation, against the best interests of AFS, and contrary to the directives in Reaves' Letter of Reprimand and Parameters for Continued Employment.

92. Reaves therefore is not entitled to any qualified immunity as a "non-outsider" to the Plaintiffs' employment contracts.

93. As a direct and proximate result of Reaves tortious interference with the Plaintiffs employment contracts, Plaintiffs are entitled to an award of damages, including back pay, front pay, and compensation for lost benefits, damage to their reputation, and emotional and mental

suffering.

## FOURTH CLAIM FOR RELIEF
### (Punitive Damages – All Defendants)

94.      Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 93 as though fully set forth herein.

95.      The conduct and actions of the Defendants, as set forth herein, were intentional, malicious, unlawful, discriminatory, and willful and wanton in reckless disregard and indifference to the rights of the Plaintiffs, which the Defendants knew or should have known would result in injury to the Plaintiffs.

96.      Defendant AFS participated in, or condoned after the fact, the actions of Defendant Reaves, its chief executive officer.

97.      By reason of the foregoing, an in order to punish the Defendants for their egregiously wrongful conduct and actions, the Plaintiffs are entitled, pursuant to the provisions of Chapter 1D of the North Carolina General Statutes, and/or 42. U.S.C. § 1981a, to an award of punitive damages in an amount to be determined at the trial of this matter.

**WHEREFORE**, Plaintiffs respectfully pray unto the Court as follows:

1.      That Plaintiffs each be awarded compensatory damages in excess of twenty-five thousand dollars ($25,000.00) against the Defendants;

2.      That Plaintiffs each be awarded punitive damages against the Defendants in an amount to be determined by the jury at the trial of this matter;

3.      For interest on any award as allowed by law;

4.      For an award of attorneys' fees to the extent permitted by law;

5.      That the costs of this action be taxed by the Court against Defendants;

6.      For trial by jury on all issues so triable; and

7.     For such other and further relief as the Court deems just and proper.


Respectfully submitted this the 19th day of October, 2018.


                              **SHIPMAN & WRIGHT, LLP**
                              *Attorney for Plaintiffs*


               By:     /s Kyle J. Nutt
                       _____
                       **KYLE J. NUTT**
                       N.C. State Bar No.: 43469
                       575 Military Cutoff Road, Suite 106
                       Wilmington, NC 28405
                       Telephone: (910) 762-1990
                       Facsimile: (910) 762-6752