IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KEVIN DOYLE and HASHIM          )
WARREN,                         )
                                )
            Plaintiffs,         )
                                )
     v.                         )        1:18CV885
                                )
ADVANCED FRAUD SOLUTIONS,       )
LLC, and THOMAS LAWRENCE        )
REAVES, JR.,                    )
                                )
            Defendants.         )


<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, JR., District Judge**

Currently before the court is Defendant Advanced Fraud
Solution, LLC's ("AFS") Motion to Dismiss pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 13.)
Plaintiffs' Complaint lists four claims, including Unlawful
Employment Discrimination/ Retaliation in violation of 42 U.S.C.
§ 2000e-3, two state law claims, and a claim for punitive
damages. (Complaint ("Compl.") (Doc. 1) ¶¶ 57-97). AFS moves for
a dismissal of Claims One and Two. Claim Three is directed only
at Defendant Thomas Lawrence Reaves, Jr. ("Reaves"). This court
finds that Claim One should be dismissed pursuant to Federal
Rule of Civil Procedure 12(b)(6). The court will decline to

exercise jurisdiction over the remaining state claims, Claims
Two and Three, and will dismiss Claim Four as moot.

## I.   **FACTUAL AND PROCEDURAL BACKGROUND**

### A.   **The Parties**

Plaintiffs Kevin Doyle ("Doyle") and Hashim Warren
("Warren") (collectively "Plaintiffs") were both employed in
AFS's marketing department and performed work for The Coder
Foundry, LLC.[1] (Compl. (Doc. 1) ¶¶ 10–14.) Reaves was the
President of AFS and supervised Warren, the Director of
Marketing, who in turn supervised Doyle, the Marketing
Coordinator. (Id. ¶¶ 10–13.) Plaintiffs and Defendant Reaves are
all citizens of North Carolina; Defendant AFS is a limited
liability company organized under the laws of North Carolina.
(Id. ¶¶ 2–4.) Plaintiffs does not allege the citizenship of
AFS's members.[2]

### B.   **Factual Background**

Plaintiffs allege that Reaves began an affair with a female
subordinate in either late 2016 or early 2017, subsequently
transferred this employee from Coder Foundry to AFS, gave her a

---

[1] AFS was a 50% owner of The Coder Foundry. (Compl. (Doc. 1)
¶ 14.)

[2] Since the court has jurisdiction under 28 U.S.C. § 1331,
this is an inconsequential omission.

-2-

substantial pay raise, and provided her with favorable treatment compared to similarly situated male employees. (Id. ¶¶ 18–19.) The favorable treatment allegedly included allowing the female employee to work from home while male employees were not. (Id. ¶¶ 19, 20.) Plaintiffs further allege that Reaves provided benefits to this female employee "at the company's expense that did not seem appropriate," such as meals and hotel rooms. (Id. ¶ 22.) Plaintiffs state that they believe Reaves had previously engaged in a similar relationship with at least one other subordinate female employee. (Id. ¶ 25.) Doyle reported to Warren that Reaves was showing "favoritism towards the Female Employee . . . ." (Id. ¶ 23.) "Plaintiffs believed that Reaves' misuse of company funds to further his relationship with the Female Employee" were acts of embezzlement. (Id. ¶ 24.) Plaintiffs then approached Bobby Davis, a member of the AFS board:

> 27. In March of 2017, Plaintiffs each had discussions with one of AFS's board members and managers, Bobby Davis, in which they reported Reaves' conduct and their concerns, including not only the preferential treatment of the Female Employee, but also the misuse of company money to further the same.

> 28. Warren specifically raised concerns that Reaves' had a position of power over the Female Employee, and was concerned that he was exerting his influence to further the inappropriate relationship, and questioned whether the relationship was consensual under the circumstances. Warren's concern was

> essentially that Reaves was creating a hostile work
> environment for female employees.

(Id. ¶¶ 27–28 (footnote omitted).) After the meeting, AFS's

human resources ("HR") department then investigated, took

statements from Plaintiffs, and concluded that Reaves had

behaved inappropriately and misused company funds. (Id.

¶¶ 30–32, 35.)

While the HR investigation was winding up, Warren filed a

charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") on April 14, 2017, but he subsequently

withdrew the charge after the precipitating grievance was

remedied. (Id. ¶ 34). The Complaint does not state how much time

passed between the filing of the first charge and its

withdrawal. (See id.) On April 17, 2017, the AFS board issued a

letter of reprimand to Reaves and had his responsibilities cut

back, including his removal as director of the Coder Foundry.

(Id. ¶¶ 31–33, 35.) The female employee in question was assigned

a different supervisor. (Id. ¶ 35.)

AFS's HR department also informed Reaves that Plaintiffs

would be reporting to Davis, not him, until further notice. (Id.

¶ 36). Though Plaintiffs were no longer reporting to Reaves, he

continued to exercise control over them. (Id. ¶ 37.) Plaintiffs

allege that "[a]lmost immediately after Reaves was reprimanded,

[Reaves] began a campaign of overt retaliation against the

Plaintiffs." (Id. ¶ 38.) This course of retaliation included withholding work from Plaintiffs, stripping Plaintiff Warren of his authority and titles, spreading rumors about Plaintiffs, changing passwords, removing furniture from Plaintiffs' offices, and eventually transferring Plaintiffs entirely to Coder Foundry. (Id. ¶¶ 38-42, 46.) Plaintiffs allege that the transfer to Coder Foundry reduced their benefits and negatively impacted their career prospects, (id. ¶ 47), because Coder Foundry was on the brink of insolvency when they were transferred, (id. ¶ 51). When Coder Foundry declared bankruptcy in November 2017, Plaintiffs were terminated. (Id.) Warren filed a second EEOC charge on November 20, 2017, and Doyle filed his charge on November 30, 2017. (Id. ¶¶ 34, 53-54.) The EEOC issued a right-to-sue letter to each Plaintiff.

C.   **Procedural History**

Plaintiffs bring the following claims against AFS: (1) Title VII retaliation for engaging in protected activity and (2) wrongful discharge in violation of public policy under N.C. Gen. Stat. § 143-422.2, for reporting suspected discrimination and embezzlement. Plaintiffs also bring a claim for tortious interference with contract against Reaves in his individual capacity (Claim Three), and a claim for punitive damages against Reaves and AFS (Claim Four). Defendant AFS filed a Motion to

Dismiss for Failure to State a Claim, (Doc. 13), as well as a supporting brief, (Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") (Doc. 14). Plaintiffs filed a Response in Opposition to Defendant AFS' Motion to Dismiss, (Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pls.' Resp.") (Doc. 17), and Defendant AFS filed a Reply, (Doc. 18). The issue is now ripe for ruling.

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556–57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. <u>Iqbal</u>, 556 U.S. at 678. Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." <u>Estate of Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp. 2d 636, 646

(M.D.N.C. 2004) (citation omitted); see also Mason v. Mach.

Zone, Inc., 851 F.3d 315, 319 (4th Cir. 2017). This court does

not, however, accept legal conclusions as true, and

"[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Iqbal,

556 U.S. at 678.

## III.  CLAIM ONE: RETALIATION UNDER 42 U.S.C. § 2000e-3

The court addresses Plaintiffs' first claim against AFS for

Employment Discrimination/Retaliation under 42 U.S.C. § 2000e-3.

(Compl. (Doc. 1) ¶¶ 57-72.) Since the court finds Plaintiffs did

not harbor an objectively reasonable belief that they were

opposing conduct made illegal by Title VII, the court finds that

Claim One should be dismissed.

It is unlawful for an employer to discriminate against an

employee "because he has opposed any practice made an unlawful

employment practice by this subchapter, or because he has made a

charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." 42

U.S.C. § 2000e-3(a). Plaintiffs with a Title VII retaliation

claim must allege facts that allow a court to find the following

elements: "(1) that she engaged in protected activity; (2) that

[the employer] took a material adverse employment action against

her, and (3) that a causal connection existed between the

–7–

protected activity and the adverse action." Peters v. Jenney, 327 F.3d 307, 320 (4th Cir. 2003); see also Savage v. Maryland, 896 F.3d 260, 276 (4th Cir. 2018). A plaintiff may survive a motion to dismiss by alleging direct evidence of a retaliation, Peters, 327 F.3d at 320 n.15, but the parties in the case at bar appear to assume that the prima facie case is the appropriate metric, (compare Def.'s Br. (Doc. 14) at 8, with Pls.' Resp. (Doc. 17) at 5-6). Seeing no alleged direct evidence of retaliation, this court will proceed under the same theory.

There are two kinds of activity for which Title VII provides protection from retaliation, and Section 2000e-3(a) identifies them in two clauses. The first clause of the statute is known as the "opposition" clause; the second is known as the "participation" clause. Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 274 (2009). The distinction is important as it pertains to the first element of a prima facie case for retaliation. In order to qualify as "protected activity" under the opposition clause, a plaintiff must show they had an objectively reasonable belief the conduct they were opposing was actionable under Title VII; however, under the participation clause, a plaintiff need not make that showing. See Netter v. Barnes, 908 F.3d 932, 937-38 (4th Cir. 2018).

Plaintiffs allege that they engaged in both oppositional and participation activities. (Compl. (Doc. 1) ¶¶ 59-61.) Most of their activities are properly classified as oppositional, but one relevant action qualifies as participation activity: Warren's April 2017 EEOC charge.

## A.  **Warren's Participation Activity: The April 2017 EEOC Charge[3]**

In summary, Plaintiffs allege participation activity in the Complaint as follows:

> 59.  Plaintiffs engaged in protected activity, to wit, Plaintiffs reported their good faith and reasonable belief that Reaves was engaging in unlawful gender discrimination by showing favoritism to what they believed to be the second female employee he had an inappropriate relationship with, which constituted preferential treatment available to female employees, both in compensation and terms of employment, that were unavailable to male employees . . . .

> 60.  Furthermore, Warren specifically filed a charge with the EEOC alleging gender discrimination in violation of Title VII, which was also protected activity.

> . . . .

> 62.  Upon information and belief, Reaves was almost immediately made aware of the Plaintiffs' protected activities.

(Compl. (Doc. 1) ¶¶ 59-60, 62.)

---

[3] Plaintiffs' later EEOC charges came well after the alleged course of retaliation took place and after their discharge from Coder Foundry. (Compl. (Doc. 1) ¶¶ 51-54.) For that reason, they could not logically have caused any retaliatory conduct.

"Participation" activities include reports through official channels and participation in formal investigations. <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 259 (4th Cir. 1998). A participation claim is only valid if the plaintiff acted within "the machinery set up by Title VII." <u>Lassiter v. LabCorp Occupational Testing Servs., Inc.</u>, 337 F. Supp. 2d 746, 755 (M.D.N.C. 2004) (quoting <u>Hashimoto v. Dalton</u>, 118 F.3d 671, 680 (9th Cir. 1997)). At least one other court has expressly found that a company's internal investigation, even if it was "formal," did not qualify as a participation activity because it was outside the scope of Title VII's formal processes. <u>Johnson v. Portfolio Recovery Assocs., LLC</u>, 682 F. Supp. 2d 560, 583 (E.D. Va. 2009).

Defendant argues that "if Plaintiffs' retaliation claim is based on participation in [the] internal HR investigation, that claim fails for lack of any allegations that the investigation was part of a Title VII proceeding." (Def.'s Br. (Doc. 14) at 16.) Plaintiffs respond that Warren was retaliated against for filing a charge with the EEOC alleging gender discrimination. (Pls.' Resp. (Doc. 17) at 6–7.) Because Plaintiffs' pleadings are somewhat confusing as to whether Plaintiffs contend Doyle was retaliated against for participation activity, this court

will briefly address participation activity as to Doyle before turning to Warren's participation activity.

With respect to Doyle, Plaintiffs make no allegation that Doyle filed an EEOC charge, or that he participated in any formal Title VII process until after his termination. (See Pls.' Resp. (Doc. 17) at 6–7.) Furthermore, Plaintiffs do not contend that any of the internal investigation constituted protected activity. (Id. at 10–11.) Absent some allegation that Doyle participated in a Title VII process in some fashion, Doyle has failed to state a claim as to Defendants for retaliation based upon participation activity. Defendants cannot be held liable to Doyle for any participation activity engaged in solely by Warren. Accordingly, to the extent Doyle could be construed to assert a claim of retaliation for participation activity prior to his termination, that claim should be dismissed.

Only Warren's April 2017 EEOC Charge can qualify as protected activity under the retaliation analysis and, therefore, any claim of retaliation for participation activity accrues only as to Warren. Warren's April 2017 EEOC charge qualifies as participation activity. However, although Warren has alleged a participation activity, Defendants argue that:

> Warren filed his first EEOC charge two weeks later and then withdrew it. ([Compl. (Doc. 1)] at ¶ 34.) There is no allegation that an internal investigation was conducted after Plaintiff Warren's EEOC charge, and no

allegation that Plaintiffs were retaliated against for participation in an investigation of that charge.

(Def.'s Br. (Doc. 14) at 16.) Plaintiffs respond to that argument:

> The Complaint alleges, in sequence under the unlawful retaliation claim, that "Warren specifically filed a charge with the EEOC alleging gender discrimination in violation of Title VII, which was also a protected activity[;]" "Reaves was almost immediately made aware of the Plaintiffs' protected activities," and that "[f]ollowing his knowledge of the Plaintiffs' protected activities, Reaves engaged in a campaign of retaliation as set forth herein, that culminated with Plaintiffs' termination." [D.E. 1, ¶¶ 60, 62-63]. Warren alleged retaliation specific to himself occurring within a short period after he filed his EEOC charge. [D.E. 1, ¶¶ 39] It undisputed that Plaintiff Warren alleged protected "participation activity" in that he made a charge and that he suffered "adverse employment action," inter alia, being stripped of his title approximately 2 months after filing his charge, which was causally linked to his protected activity. [D.E. 1, ¶¶ 34, 39, 44].

(Pls.' Resp. (Doc. 17) at 6-7.) Contrary to their argument, however, Plaintiffs have not plausibly alleged a causal connection between Warren's protected activity and any retaliation.

The Fourth Circuit has held that "very little evidence of a causal connection is required to establish a prima facie case of retaliation," and temporal proximity is sufficient. Burgess v. Bowen, 466 F. App'x 272, 283 (4th Cir. 2012) (internal quotation marks and alterations omitted). Though establishing causation at the pleading stage is not "an onerous burden[,] . . . no causal

-12-

connection can exist between an employee's protected activity and an employer's adverse action if the employer was unaware of the activity." <u>Strothers v. City of Laurel</u>, 895 F.3d 317, 335–36 (4th Cir. 2018).

Here, Warren's EEOC charge was filed on April 14, 2017. (Compl. (Doc. 1) ¶ 34.) Plaintiffs allege that "[f]ollowing his knowledge of the Plaintiffs' protected activities, Reaves engaged in a campaign of retaliation . . . ." (<u>Id.</u> ¶ 63.) These facts might give rise to an inference of a causal connection between Warren's protected activity and retaliation because of the close timing between the events. However, this court construes the Complaint to plausibly allege retaliation by Reaves in response to AFS's internal investigation, not Warren's EEOC charge. Although Plaintiffs appear to use the "protected activities" to refer to Warren's EEOC charge and Defendant AFS's internal investigation, (<u>see e.g.</u>, Compl. (Doc. 1) ¶¶ 29–38), this court finds the Complaint fails to plausibly allege that either Reaves or Defendant AFS were aware of Warren's EEOC charge. Plaintiff must allege facts plausibly alleging that the employer was somehow motivated by the employee's participation activities when taking the retaliatory actions. <u>Villa v. CavaMezze Grill, LLC</u>, 858 F.3d 896, 901 (4th Cir. 2017). "[T]he facts the decision-maker actually perceived matter. If an

employer . . . never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware." Id.

First, unlike other cases where charges were filed and employers were aware of the charges prior to the retaliatory conduct, see Williams v. Cerberonics, Inc., 871 F.2d 452, 454, 457 (4th Cir. 1989), Warren withdrew his first EEOC charge after receiving "certain commissions . . . which he lost as a direct result of the Female Employee's failure to carry out job duties." (Compl. (Doc. 1) ¶ 34). Plaintiffs fail to allege a time frame between the filing of the EEOC charge and withdrawal of the charge that might support a plausible inference as to Reaves or AFS's knowledge of the filing of the charge.[4] Under the circumstances here where Warren filed and then withdrew his EEOC charge, there is nothing to support a finding Defendants were aware of the charge. See e.g., Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994) (allowing a retaliation claim to go forward

---

[4] EEOC's own website states that, once a charge is filed, the EEOC will contact the complainant's employer within ten days. What You Can Expect After You File a Charge, U.S. E.E.O.C., https://www.eeoc.gov/employees/process.cfm (last visited Mar. 13, 2020). It is entirely possible Warren withdrew his charge before anyone at AFS was ever notified by the EEOC, and there are no facts alleged to refute that possibility or make it less likely than the alternative.

because the plaintiff pleaded facts showing that his employer
helped him complete his EEOC charge, and his adverse employment
action occurred only weeks after his first EEOC hearing).

Second, Plaintiffs allege no facts suggesting the
underlying issues about which both Plaintiffs complained were
somehow remedied because of AFS's knowledge of the EEOC charge
or in an effort by AFS to respond to the EEOC charge. Regardless
of the absence of any direct knowledge, those circumstances
might make it clear that at least AFS knew of the EEOC charge.
Instead, AFS's actions are far more reasonably inferred to have
been the direct result of their own internal investigation.
AFS's response to that investigation, reprimanding Reaves,
occurred only three days after Warren filed his EEOC charge.

Third, and most importantly, Plaintiffs' own allegations
suggest it was the HR findings, not the April 14, 2017 EEOC
charge, that motivated Reaves' retaliation. As Plaintiffs
allege, Reaves was reprimanded on April 17, 2017, (Compl. (Doc.
1) ¶ 35), and "[a]lmost immediately after Reaves was reprimanded
[by HR], he began a campaign of overt retaliation against the
Plaintiffs," (id. ¶ 38). Plaintiffs' own allegations plausibly
suggest any retaliation resulted from the HR reprimand, not the
EEOC charge, which at that time had only been filed for a period
of three days. (See id. ¶¶ 35, 38.) Although Plaintiffs have

inartfully and confusingly alleged retaliation for "protected activities" to include both participation and opposition, (see Compl. (Doc. 1) ¶¶ 58-63), the well-pleaded allegations establish retaliation in response to the HR investigation, not the EEOC charge.

Plaintiffs make a general assertion that "Reaves was almost immediately made aware of the Plaintiffs' protected activities." (Id. ¶ 62.) This allegation, however, is a conclusory statement supported by plausible facts as to the HR reprimand but not supported by any plausible factual allegations as to knowledge of the EEOC charge. Because the internal AFS investigation is not protected participation activity, Plaintiffs only allege facts that support the conclusion that Reaves knew of Plaintiffs' protected oppositional activities, that is, the AFS HR investigation process. Indeed, they allege more than enough facts to reach that conclusion. (See id. ¶¶ 36, 38, 43, 45-46.) There are no facts alleged, however, that support the same conclusion for Reaves or AFS's awareness of Warren's EEOC charge. Furthermore, inferring that Reaves found out about the EEOC charge is far from reasonable since the charge was withdrawn after an unknown period of time. "[N]aked assertions devoid of further factual enhancement [will] not suffice." McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th

Cir. 2015) (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). The court is left to speculate whether Reaves knew or did not know about Warren's protected activity, and "[f]actual allegations must be enough to raise a right to relief above the speculative level." Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (quoting Twombly, 550 U.S. at 555).

Finding Plaintiffs have not plausibly alleged that Reaves or AFS were aware of Warren's April 2017 EEOC charge, the court turns to Plaintiffs' oppositional activity.

## B. **Plaintiffs' Oppositional Activity**

In addition to Warren's participation activity, both Plaintiffs also engaged in oppositional activity. Since Plaintiffs did not have an objectively reasonable belief the conduct they were challenging was actionable under Title VII, however, their opposition activity cannot be classified as "protected" under Title VII.

"Employees engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspected violations of Title VII.'" Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (quoting Bryant v. Aiken Reg'l Med. Ctrs. Inc., 333 F.3d 536, 543–44 (4th Cir. 2003)). The definition of oppositional conduct is "broad . . . [and] and the

threshold for oppositional conduct is not onerous." DeMasters v.
Carilion Clinic, 796 F.3d 409, 417 (4th Cir. 2015). In this
case, Plaintiffs' decisions to complain to Bobby Davis, a board
member and manager at AFS, (Compl. (Doc. 1) ¶ 27), and to
participate in the internal investigation by AFS's HR
department, (id. ¶¶ 30-36), are acts that qualify as
oppositional activity.

To bring a retaliation claim for oppositional activity, an
employee must have an objectively reasonable belief that the
conduct they opposed was illegal under Title VII. Peters, 327
F.3d at 321; see Boyer-Liberto, 786 F.3d at 282; Jordan v. Alt.
Res. Corp., 458 F.3d 332, 340-41 (4th Cir. 2006) ("Navy Federal
holds that an employee seeking protection from retaliation must
have an objectively reasonable belief in light of all the
circumstances that a Title VII violation has happened or is in
progress."), overruled in part by Boyer-Liberto, 786 F.3d 264
(4th Cir. 2015); E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d
397, 406 (4th Cir. 2005) (requiring a "reasonable basis" for
believing the opposed practice was unlawful).

In determining what beliefs are and are not reasonable,
"Title VII must be read 'to provide broader protection for
victims of retaliation than for [even] victims of race-based,
ethnic-based, religion-based, or gender-based discrimination,'

-18-

because 'effective enforcement could . . . only be expected if employees felt free to approach officials with their grievances.'" Boyer-Liberto, 786 F.3d at 283 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 66–67 (2006)). It is necessary to Title VII's success that employees feel free to report, and report early, what they perceive to be acts of discrimination. See id.

Despite these policy underpinnings, objectively "reasonable" still means there must be a minimum level of reasonableness beyond an employee's subjective beliefs. In determining what constitutes objective reasonableness, this court will start by examining the case law pertaining to the complained-of conduct.

### i.  Reasonableness of Beliefs: Gender Discrimination

The court begins with Plaintiffs' alleged belief that they were victims of gender discrimination.

The parties disagree on whether the current state of the law regarding paramour preference is relevant to the objective reasonableness of Plaintiffs' belief that Reaves' conduct violated Title VII. While AFS asserts in its Reply that case law is relevant, (Doc. 18 at 5–6), Plaintiffs "contend that the reasonableness of their beliefs should be objectively viewed under a 'reasonable person' standard, not the trained analytical

eyes of lawyers." (Pls.' Resp. (Doc. 17) at 12 n.3.) The court agrees with Defendant.

In at least one unpublished opinion, the Fourth Circuit paralleled an approach used in the Eleventh Circuit that accounts for the current state of case law when evaluating reasonableness in the Title VII retaliation context. See, e.g., Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 n.2 (11th Cir. 1998) ("If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge."); see also Sherk v. Adesa Atlanta, LLC, 432 F. Supp. 2d 1358, 1370 (N.D. Ga. 2006) ("[T]he unanimity with which the courts have declared favoritism of a paramour to be gender-neutral belies the reasonableness of Plaintiff's belief that such favoritism created a hostile work environment.").

As a panel of the Fourth Circuit has said, "[t]he most obvious measure of the objective reasonableness of a plaintiff's belief that the conduct of which he complained violated Title VII is the state of the case law at the time the plaintiff engaged in the protected activity." Mayo v. Kiwest Corp., No. 95-2638, 1996 WL 460769, at *4 (4th Cir. Aug. 15, 1996), overruled on other grounds by Scott v. Norfolk So. Corp., No.

97-1490, 1998 WL 387192 (4th Cir. June 24, 1998);[5] <u>see also</u>

<u>Wainwright v. Carolina Motor Club, Inc.</u>, No. 1:03 CV 01185, 2005

WL 1168463, at *10 (M.D.N.C. Apr. 27, 2005) ("'Objectively

reasonable' means reasonable in light of the facts of the case

and current, substantive caselaw."); <u>Cyr v. Perry</u>, 301 F. Supp.

2d 527, 535-36 (E.D. Va. 2004) ("Subjective ignorance [of the

law] cannot create objective reasonableness. If a belief is

unreasonable, plaintiff's ignorance in believing it does not

make it reasonable.").

    None of the cited authority is binding on this court, but

the reasoning in those cases is persuasive. It is true, as

Plaintiffs assert, that retaliation victims should not be forced

to view the law with the "trained analytical eyes of lawyers."

<u>Ferrell v. Harris Ventures, Inc.</u>, 812 F. Supp. 2d 741, 746 (E.D.

Va. 2011). A "trained analytical eye" is not required when it

---

[5] <u>Mayo</u> held that a plaintiff's allegation of sex
discrimination by someone of the same sex was clearly not
actionable under existing case law and thus any opposition was
not objectively reasonable and could not support a retaliation
claim. <u>Mayo</u> is no longer good law in that the Supreme Court has
subsequently ruled "that sex discrimination consisting of same-
sex sexual harassment is actionable under Title VII." <u>See</u> <u>Oncale
v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 79-82 (1998).
However, <u>Mayo</u>'s approach to determining the objective
reasonableness of a plaintiff's belief that conduct violates
Title VII remains valid and instructive.

comes to favoritism and Title VII.[6] Nevertheless, the facts of the case and current substantive caselaw are a factor.

Courts, and the EEOC itself, almost universally declare that relationships such as Reaves', and the conduct with the female employee, are not actionable under 42 U.S.C. § 2000e-2. "The Fourth Circuit has expressly held that a supervisor's preferential treatment of a paramour on the basis of a sexual relationship that is consensual is not discrimination based on sex." Ahern v. Omnicare ESC LLC, No. 5:08-CV-291-FL, 2009 WL 2591320, at *5 (E.D.N.C. Aug. 19, 2009) (citing Becerra v. Dalton, 94 F.3d 145, 149–50 (4th Cir. 1996));[7] see also Tenge v.

---

[6] "Although it is appropriate to construe Title VII's prohibition on retaliation generously, and we do not require a sophisticated understanding on the part of a plaintiff of this relatively nuanced area of law, it is difficult to see how [plaintiff] could have had even a subjectively reasonable, good-faith belief that her conduct was protected. She made no complaints that suggested a belief that she was being discriminated against on the basis of any trait, protected or otherwise." Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir. 2013).

[7] Becerra was decided on a motion for summary judgment rather than a motion to dismiss. However, it seems the defendant in Becerra never filed a motion to dismiss, and it appears that the Becerra court's conclusion would also have required granting a motion to dismiss in that case. See Becerra, 94 F.3d at 150 ("[E]ven accepting as true the fact that the commanding officer was accepting sexual favors from Pallas, this conduct does not amount to sexual discrimination."). Plaintiffs argue that Becerra can be distinguished because it relates solely to a

(Footnote continued)

_Phillips Modern Ag Co._, 446 F.3d 903, 909-10 (8th Cir. 2006);

_Ackel v. Nat'l Commc'ns, Inc._, 339 F.3d 376, 382 (5th Cir.

2003); _Schobert v. Ill. Dep't of Transp._, 304 F.3d 725, 732-33

(7th Cir. 2002); _Womack v. Runyon_, 147 F.3d 1298, 1300-01 (11th

Cir. 1998); _Taken v. Oklahoma Corp. Comm'n_, 125 F.3d 1366, 1370

(10th Cir. 1997); _DeCintio v. Westchester Cty. Med. Ctr._, 807

F.2d 304, 308 (2d Cir. 1986); _Miller v. Aluminum Co. of Am._, 679

F. Supp. 495, 501 (W.D. Pa. 1988), _aff'd_, 856 F.2d 184 (3d Cir.

1988). _But see_ _King v. Palmer_, 778 F.2d 878, 878-80 (D.C. Cir

1985) (permitting a Title VII failure-to-promote claim based on

alleged sexual favoritism, where the defendant did not dispute

that such a claim was within Title VII and where the court

applied a now-discredited approach to pretext), _abrogated by_ _St._

_Mary's Honor Ctr. v. Hicks_, 509 U.S. 502 (1993). These holdings

are aligned with EEOC guidance. As the EEOC has stated,

> Title VII does not prohibit . . . preferential
> treatment based upon consensual romantic relationships.
> An isolated instance of favoritism toward a "paramour"
> . . . may be unfair, but it does not discriminate
> against women or men in violation of Title VII, since

---

factual situation where a subordinate offers sexual favors to a
supervisor to enhance his or her own career prospects (rather
than the supervisor soliciting sex). (_See_ Pls.' Resp. (Doc. 17)
at 12-13.) But the Fourth Circuit in _Becerra_ explicitly endorsed
_DeCintio_'s broader holding "that voluntary, romantic
relationships cannot form the basis of a sex discrimination
suit" and thus covers the factual allegations here. _DeCintio v._
_Westchester Cty. Med. Ctr._, 807 F.2d 304, 308 (2d Cir. 1986).

> both are disadvantaged for reasons other than their
> genders.

EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, EEOC Notice No. 915.048 (Jan. 12, 1990). Case law and EEOC guidance all declare that the preferential treatment of paramours is not actionable under Title VII. For that reason, at least one recent court in the Fourth Circuit has found the state of the law sufficient to declare, as a matter of law, that a plaintiff who opposed a paramour relationship did not have reasonable belief he was opposing conduct barred by Title VII. <u>Tucker v. Shinseki</u>, C/A No. CA 3:11-3123-CMC-PJG, 2013 WL 5309143, at *2 (D.S.C. Sept. 18, 2013).

Of course, if the "paramour" is engaged in the relationship against his or her will, then it is possible for a plaintiff to make out a Title VII claim. <u>See</u> 29 C.F.R. § 1604.11(g) ("Where employment opportunities or benefits are granted because of an individual's <u>submission</u> to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit.") (emphasis added). "In their general [interpretation] of this . . . regulation, courts have concluded that the word 'submission' in the regulation indicates that the relationship must be non-consensual." <u>Ahern</u>, 2009 WL 2591320, at *9 n.2.

"Here, [Plaintiffs] makes no allegation that the relationship between [Reaves] and [the female employee] was non-consensual or coerced. In fact, the allegations in [their] complaint indicate otherwise." Id. at *6. Reaves' status as a supervisor is not, without further allegations, sufficient to plausibly allege that the relationship was not consensual. See id.

Finally, even assuming case law played no role in determining the reasonableness of Plaintiffs' beliefs, the objective circumstances surrounding Reaves' relationship undermine any objective belief that Title VII was being violated. Plaintiffs point out that, since Reaves only chose female companionship, male employees were denied the chance to enjoy his favoritism. (See Compl. (Doc. 1) ¶ 26.) While this is true, it was also patently clear that other female employees with whom Reaves did not become involved were denied the opportunities of the female employee. Plaintiffs saw that it was not only males who were being discriminated against — it was also other females. It is that very reason that the vast majority of case law and the EEOC are unanimous in their conclusion that providing favors to a paramour is not actionable: there is no discrimination based on gender since male and female alike suffer. See, e.g., Becerra, 94 F.3d at 149 ("The plaintiffs were not prejudiced because of their status as

males; rather, they were discriminated against because the [employer] preferred his paramour. The plaintiffs faced exactly the same predicament as that faced by any woman applicant for the promotion.") (quotation marks omitted). The facts alleged support the conclusion that male and female alike were being denied the benefits of Reaves' "favoritism," (Compl. (Doc. 1) ¶ 32), an objective fact that makes it less reasonable to call the situation one of gender discrimination.[8]

---

[8] It is this objective circumstance, that Reaves' favoritism discriminated across gender lines, that also makes it more appropriate to consider the state of the law in assessing reasonableness. One court in the District of Maryland rejected imputing knowledge of the law to laypersons except in the "broadest sense." Young v. Giant Food Stores, LLC, 108 F. Supp. 3d 301, 316 n.8 (D. Md. 2015) (citing and distinguishing Harper v. Blockbuster Entm't. Corp., 139 F.3d 1385, 1388 n.3 (11th Cir. 1998)).

In Young, the issue was that a female plaintiff claimed she was being subjected to a sexually hostile work environment, though her pleadings fell short of what the law requires. Id. This court agrees that it would go too far to require a retaliation plaintiff to understand the "contours of Title VII." Id. However, the present case is not one of contours, but one of hard boundaries. The question Plaintiffs faced was not if the degree of the conduct violated Title VII, but if the kind of conduct violated Title VII. This is where the law in the "broadest sense" was clear, and that should matter in what is a reasonable belief. The law unanimously declares that paramour preference is not actionable. The objective fact that male and female employees alike suffered from Reaves' preference of one paramour makes it unreasonable to think Reaves was engaging in gender discrimination. See Murray v. City of Winston-Salem, 203 F. Supp. 2d 493, 501-02 (M.D.N.C. 2002) (citing Becerra, 94 F.3d at 149-50).

Given the state of the case law and the facts underlying most paramour cases, courts generally conclude that retaliation plaintiffs in paramour cases cannot claim a reasonable belief that they were opposing gender discrimination. As a court in the Western District of Kentucky noted when ruling on a motion for summary judgment:

> As far as this court is aware, every other court to have considered the issue has found that a plaintiff who expressed opposition to favoritism resulting from a consensual affair did not have a reasonable basis to believe he or she was opposing an unlawful practice. Krasner [v. HSH Nordbank AG], 680 F. Supp. 2d [502,] 520-522 [(S.D.N.Y. 2010)] (dismissing retaliation claim where "the overall content and context of [the plaintiff's] internal complaints suggest, at most, a consensual affair that — while perhaps unfair, bad for morale and detrimental to the department and the company — in itself harmed no one on account of a protected characteristic"); Sherk v. Adesa Atlanta, LLC, 432 F. Supp. 2d 1358, 1370-1372 (N.D. Ga. 2006) (holding that "the unanimity with which the courts have declared favoritism of a paramour to be gender-neutral belies the reasonableness of Plaintiff's belief that such favoritism created a hostile work environment"); see Anderson v. Oklahoma State Univ. Bd. of Regents, 342 F. App'x 365, 367-368 (10th Cir. 2009); Mair v. Napolitano, 2011 WL 6209799, at *5-*6 (W.D. Mich. Dec. 14, 2011); Sullivan-Weaver v. New York Power Auth., 114 F. Supp. 2d 240, 243 (S.D.N.Y. 2000); Harvey v. Chevron U.S.A., Inc., 961 F. Supp. 1017, 1033-1034 (S.D. Tex. 1997); O'Patka v. Menasha Corp., 878 F. Supp. 1202, 1206-1209 (E.D. Wis. 1995). This court sees no reason to depart from the unanimous precedent on the subject.

Stanley v. Insights Training Grp., LLC, Civil Action No. 3:09-CV-00231, 2013 WL 76123, at *7 (W.D. Ky. Jan. 4, 2013); see also Watkins v. Fairfield Nursing & Rehab. Ctr., LLC, No. 2:11-CV-

2380-VEH, 2012 WL 1566228, at *8 (N.D. Ala. Apr. 26, 2012) (dismissing Title VII retaliation claim in paramour case because of plaintiff's "incurable inability to demonstrate a 'reasonable belief' that plaintiff was opposing conduct sanctioned by Title VII).

Like the <u>Stanley</u>[9] court, this court also does not see a reason to "depart form the unanimous precedent" on this subject. In light of the state of the case law and the alleged facts surrounding Reaves' relationship, this court finds that Plaintiffs could not have had an objectively reasonable belief that they were opposing gender discrimination under Title VII.

---

[9] At least one of the cases cited by <u>Stanley</u> focused its analysis not on what the employee reasonably believed, but what the employer could reasonably have been expected to discern from the employee's complaint to his supervisors. <u>See</u> <u>Krasner v. HSH Nordbank AG</u>, 680 F. Supp. 2d 502, 520 (S.D.N.Y. 2010). <u>Stanley</u> itself mixed its own analysis between what the plaintiff reasonably believed and what he communicated to his employer. <u>See</u> <u>Stanley</u>, 2013 WL 76123, at *7. The other case cited by <u>Stanley</u> analyzed the reasonableness of those plaintiffs' beliefs that they were opposing conduct prohibited by Title VII. Plaintiffs' complaints to AFS are open to the same criticism about what they reasonably conveyed to AFS. Plaintiffs' allegations regarding their complaints to AFS do not indicate they complained about gender discrimination, but about "favoritism." (Compl. (Doc. 1) ¶¶ 23-24, 27-28, 30-31.) Warren's April 2017 EEOC charge named gender discrimination, but, as laid out above, the allegations do not support the inference that AFS knew about that charge. (<u>Id.</u> ¶ 32.)

### ii. Reasonableness of Beliefs: Sexual Harassment and Hostile Work Environment

Plaintiffs allege that they were also opposing what they believed to be an emerging hostile work environment. The court finds Plaintiffs could not have reasonably believed that they were opposing a sexually hostile work environment.

First, however, the court notes that it appears Plaintiffs make more of their concerns about a sexually hostile work environment in their response brief than their Complaint does with facts. (See Pls.' Resp. (Doc. 17) at 10–12.) Plaintiffs argue that, given the Fourth Circuit's direction in Boyer-Liberto that reasonableness be read broadly in the retaliation context, their beliefs about Reaves' emerging modus operandi were reasonable. (Id. at 11–12.) However, Plaintiffs' own claim for relief in Claim One is that Reaves' "favoritism" was affecting their own careers, not any type of sexually hostile environment. Plaintiffs allege "gender discrimination" throughout their first claim. (Compl. (Doc. 1) ¶¶ 58-61.) Warren's April 2017 EEOC Charge alleged "gender discrimination," not sexual harassment or hostile work environment. (Id. ¶ 60.) Even Plaintiffs' November 2017 EEOC charges did not mention a hostile work environment. (Id. ¶¶ 53-54.) Concerns about "preferential treatment" pervades Plaintiffs' allegations regarding their cooperation with the HR investigation. (Id.

-29-

¶ 59.) There is a brief mention of a "hostile work environment"; Plaintiffs allege that, after relaying their concerns to HR about Reaves' preferential treatment and misuse of company funds, they "further raised concerns of a potentially hostile work environment." (Id.) Viewing Plaintiffs' allegations as a whole, these "concerns" seem minor when compared to the complaints of favoritism and preferential treatment. Still, the court will address the reasonableness of any belief a hostile work environment was emerging.

"[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citations and quotations omitted). Plaintiffs who are victims of a sexually hostile work environment must allege facts that allow a court to infer the following elements: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir. 2000) (emphasis added). "[A] single, non-coercive

sexual relationship between a co-worker and supervisor resulting in preferential treatment to her and not" a male coworker "do[es] not rise to the level of alleging a workplace permeated with sexually discriminatory 'intimidation, ridicule, and insult.'" O'Patka v. Menasha Corp., 878 F. Supp. 1202, 1208 (E.D. Wis. 1995) (quoting Harris, 510 U.S. 17); see also Tucker, 2013 WL 5309143, at *2; Sherk, 432 F. Supp. 2d at 1372; Buenrostro v. Flight Safety Int'l, Inc., No. Civ.A.SA-99-CA0819FB, 2001 WL 674171, at *6 (W.D. Tex. Mar. 2, 2001), report accepted, No. Civ.A.SA-99-CA-819FB, 2001 WL 685719 (W.D. Tex. Mar. 28, 2001), aff'd in part, 62 F. App'x 556 (5th Cir. 2003); Murray, 203 F. Supp. 2d at 499; Elger v. Martin Mem'l Health Sys., Inc., 6 F. Supp. 2d 1351, 1353 (S.D. Fla. 1998); Miller, 679 F. Supp. at 502. "The law is clear regarding so-called paramour preferential treatment. A co-worker's romantic involvement with a supervisor does not by itself create a hostile work environment." Mathews v. City of La Verne, No. CV 96-1163 JGD, 1997 WL 351073, at *5 (C.D. Cal. Mar. 13, 1997).

However, "[t]he EEOC states that widespread favoritism based upon consensual sexual relationships may give rise to a hostile work environment claim where such behavior conveys an implicit message 'that the managers view women as "sexual playthings," thereby creating an atmosphere that is demeaning to

women.'" <u>Ahern</u>, 2009 WL 2591320, at *7 (quoting EEOC Notice No. 915-048, § C (Jan. 12, 1990)). But "[w]idespread favoritism refers to an environment where <u>multiple supervisors</u> are engaging in [the] behavior." <u>Bartniak v. Cushman & Wakefield, Inc.</u>, 223 F. Supp. 2d 524, 532 (S.D.N.Y. 2002) (emphasis added). Witnessing "favoritism by a single supervisor toward a single employee" is not widespread and cannot be viewed as a hostile work environment. <u>Ahern</u>, 2009 WL 2591320, at *7 (citing <u>McGinnis v. Union Pac. R.R.</u>, 496 F.3d 868, 874 (8th Cir. 2007) ("A single allegation against [a supervisor] cannot constitute widespread sexual favoritism.")).

Plaintiffs' allegations do not plausibly allege that AFS had a sexually hostile work environment. Plaintiffs observed only one supervisor engaged in a consensual relationship with one employee. Though they do allege they were told about another, previous affair between Reaves and another employee, (1) the allegations still name only one supervisor, Reaves, and

(2) the fact that Plaintiffs did not personally observe that affair reduces its potency.[10]

Plaintiffs' allegations fail to plausibly allege a sexually hostile work environment, but the key issue is still whether it was reasonable for them to think they were opposing a hostile work environment either presently or potentially. In other cases, where plaintiffs alleged retaliation for reporting paramour relationships they claimed were creating hostile work environments, courts have held such beliefs unreasonable. Kelly, 716 F.3d at 15; Marcus v. Leviton Mfg. Co., No. 15-CV-656 (SJF)(GRB), 2016 WL 74415, at *6 (E.D.N.Y. Jan. 6, 2016), aff'd, 661 F. App'x 29 (2d Cir. 2016); Mathews, 1997 WL 351073, at *6; see Clark v. Cache Valley Elec. Co., 573 F. App'x 693, 702 (10th Cir. 2014) (affirming summary judgment); McManus v. Town of Hamburg, No. 12-CV-036S, 2014 WL 2434949, at *8 (W.D.N.Y. May 30, 2014) (summary judgment); Tucker, 2013 WL 5309143, at *2

_____

[10] "There is, of course, the other alleged affair Gott had with a subordinate prior to the start of plaintiff's employment with defendant, about which she learned from other employees. However, the contribution of this other alleged affair to any hostile work environment is significantly diminished because plaintiff did not witness the conduct during her own employment. See Cowan v. Prudential Ins. Co. of America, 141 F.3d 751, 757 (7th Cir. 1998) (noting that an employee could not use statements of a co-worker to make out a Title VII violation because, in part, the employee was not exposed to the conduct)." Ahern, 2009 WL 2591320, at *7.

(summary judgment); Dehaan v. Urology Ctr. of Columbus LLC, No.
4:12-CV-6 (CDL), 2013 WL 3227678, at *3 (M.D. Ga. June 25, 2013)
(summary judgment); Jackson v. Flowers Bakery of Cleveland,
L.L.C., No. 1:07-cv-112, 2008 WL 2002459, at *9 (E.D. Tenn.
May 7, 2008) (summary judgment); Drummond v. IPC Int'l, Inc.,
400 F. Supp. 2d 521, 535 (E.D.N.Y. 2005) (summary judgment).
This court finds that Plaintiffs did not have an objectively
reasonable belief that there was a sexually hostile work
environment at AFS.

Further, Plaintiffs' allegations are devoid of any sexually
explicit conduct between Reaves and the female employee.[11]
Plaintiffs do not allege that Reaves and the employee engaged in
sexual banter, that Reaves made inappropriate sexual remarks, or
anything of the like. As the Second Circuit said in Kelly when
affirming dismissal of a retaliation claim for complaining about
an allegedly hostile environment stemming from a paramour
relationship,

> [t]here is nothing in Kelly's complaint, however, to
> indicate that her sex, in one way or another, played a
> substantial role in her brothers' behavior. Although
> Kelly alleges that she repeatedly used the words

---

[11] It is for this reason that Plaintiffs' reliance on Boyer-
Liberto is misplaced. That case involved limited, but
reprehensible conduct, including physically threatening behavior
and racial slurs. Boyer-Liberto, 786 F.3d at 269-70. If
Plaintiffs had alleged any hostile conduct by Reaves, Boyer-
Liberto might apply, but they did not, and it does not.

"discrimination" and "harassment" when complaining to her employers, her argument that the widespread sexual favoritism constituted gender discrimination because it resulted in an atmosphere demeaning to women is entirely unsupported by the allegations in her complaint. Kelly does not allege that [the paramours] engaged in sexually explicit behavior or conversations in the office, or that [the supervisor] took any actions or made any statements that were of a sexual or gender-specific nature that could be perceived as demeaning to women. Nothing in the complaint indicates that sexual discourse displaced standard business procedure in a way that prevented Kelly from working in an environment in which she could be evaluated on grounds other than her sexuality.

Kelly, 716 F.3d at 15–16 (alterations in original) (internal quotations omitted). The same could be said of Plaintiffs' Complaint here.

Finally, even if Plaintiffs had an objectively reasonable belief that they were opposing a sexually hostile work environment, their complaints to AFS did not convey that they were complaining about Title VII conduct. Fourth Circuit precedent holds "that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." Burgess v. Bowen, 466 F. App'x 272, 282 (4th Cir. 2012); see also Strothers, 895 F.3d at 335; Richardson v. Richland Cty. Sch. Dist., 52 F. App'x 615, 617 (4th Cir. 2002); Krasner, 680 F. Supp. 2d at 520.

Plaintiffs' complaints to AFS were not clearly tied to

Title VII. Plaintiffs' allegations regarding their complaints to

AFS do not indicate they complained about gender discrimination

or a hostile work environment, but about "favoritism." (Compl.

(Doc. 1) ¶¶ 23-24, 27, 30-31.) Specifically, Plaintiffs allege

the following:

> 23. Doyle reported his concerns that Reaves was
> showing favoritism towards the Female Employee to
> Warren, his immediate supervisor.

> 24. Plaintiffs believed that Reaves' misuse of
> company funds to further his relationship with the
> Female Employee were tantamount to embezzlement of
> company money.

> . . . .

> 27. In March of 2017, Plaintiffs each had
> discussions with one of AFS's board members and
> managers, Bobby Davis, in which they reported Reaves'
> conduct and their concerns, including not only the
> preferential treatment of the Female Employee, but also
> the misuse of company money to further the same.

> 28. Warren specifically raised concerns that
> Reaves[] had a position of power over the Female
> Employee, and was concerned that he was exerting his
> influence to further the inappropriate relationship,
> and questioned whether the relationship was consensual
> under the circumstances. Warren's concern was
> essentially that Reaves was creating a hostile work
> environment for female employees.

(Id. ¶¶ 23-24, 27-28.) The only mention of gender discrimination

comes at the end of paragraph twenty-eight when Plaintiffs

summarize, after the fact, the gist of the discussion, and that

summary is not a well-pleaded fact. All other facts mention

-36-

"favoritism" and "misuse of company funds."[12] A few references
by Plaintiffs to "gender discrimination" and a "hostile
environment" do not change the nature of Plaintiffs' allegations
about what they actually told AFS. See Kelly, 716 F.3d at 15
("Although Kelly alleges that she repeatedly used the words
'discrimination' and 'harassment' when complaining to her
employers, her argument that the widespread sexual favoritism
constituted gender discrimination because it resulted in an
atmosphere 'demeaning to women' is entirely unsupported by the
allegations in her complaint.").

The results of Plaintiffs' complaints to AFS seem to
confirm their disassociation from Title VII. According to
Plaintiffs, AFS reprimanded Reaves because he was improperly
using company funds and showed "favoritism." (Id. ¶¶ 31, 33
("[HR] suggested Reaves had breached his fiduciary duties . . .
[and] [Reaves'] actions were a breach of the AFS Board's
expectations and trust . . . .").) Furthermore, as indicated by
the material quoted in the Complaint, Plaintiffs apparently had
the ability to read and quote from the HR investigation
findings, (see id. ¶¶ 31, 35), yet there is no quote from the

---

[12] Warren's April 2017 EEOC charge named gender
discrimination, but, as laid out above, Plaintiffs' allegations
do not support the inference that AFS knew about that charge.
(Compl. (Doc. 1) ¶ 32.)

report mentioning concerns about Reaves as the creator of a sexually hostile work environment. The HR report did note that Reaves had shown "favoritism." (Id. ¶ 32.)[13]

In summary, Plaintiffs did not have an objectively reasonable belief that they were opposing a hostile work environment. Even if they did, they have not plausibly alleged that they reasonably communicated that concern to AFS. For these reasons, any claim to have opposed a sexually hostile environment will not save Plaintiffs' retaliation claim.

### iii. Plaintiffs' Beliefs about Reaves' Conduct were not Reasonable

Considering all the alleged facts, as well as the clear state of the case law regarding favors to paramours, this court finds that Plaintiffs have failed to plausibly allege facts that allow this court to conclude they had a reasonably objective belief about Reaves' conduct. As such, Plaintiffs' oppositional activity based on those beliefs does not qualify as protected activity. Plaintiffs fail to plausibly allege facts allowing

---

[13] Plaintiffs argue that "[i]t is incredible that AFS, who acted upon Plaintiffs' reports and eliminated the liability, now contend those reports did not even meet the 'reasonable belief' standard." (Pls.' Resp. (Doc. 17) at 12.) Plaintiffs fail to acknowledge the reasons AFS had to issue a reprimand: favoritism and abuse of company funds, two reasons that are not related to any Title VII allegations.

this court to find that the first element of a prima facie
retaliation case is present.

### C.  Claim One is Dismissed

In conclusion, Warren's April 2017 EEOC charge that was
filed and then withdrawn cannot be linked to any retaliation.
Plaintiffs have failed to allege any facts from which this court
can conclude or infer that Reaves or AFS ever knew about
Warren's participation activity. As to the oppositional
activities, Plaintiffs have also failed to allege facts that
allow this court to find their beliefs about Reaves' behavior
reasonable. It is for these reasons that Plaintiffs have failed
to plead a plausible case of retaliation under Title VII.
Therefore, Defendant's Motion to Dismiss pursuant to Rule
12(b)(6) will be granted as to Claim One.

### IV.  CLAIMS TWO, THREE, AND FOUR

With the only claim over which this court had original
jurisdiction to be dismissed, Claims Two, Three, and Four will
also be dismissed. A district court may dismiss a state law
claim brought before it under supplemental jurisdiction if "the
district court has dismissed all claims over which it has
original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to
do so is completely within the court's discretion. Carlsbad
Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009); Arbaugh

v. Y & H Corp., 546 U.S. 500, 514 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims.").

Since this matter has not progressed past the motion-to-dismiss stage and only state-law claims remain, the court declines to exercise its supplemental jurisdiction over Claims Two or Three. With all claims dismissed, Claim Four is also dismissed as moot.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant Advanced Fraud Solution, LLC's ("AFS") Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Doc. 13), is **GRANTED**. Claim One is **DISMISSED** pursuant to Fed. R. Civ. P. 12(b)(6). Furthermore, Claims Two and Three are also **DISMISSED** pursuant to 28 U.S.C. § 1367(c)(3). Claim Four is **DISMISSED AS MOOT.** All claims are dismissed without prejudice.

A judgment in accordance this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 19th day of March, 2020.


_____
United States District Judge